# CAPITAL TRACTION COMPANY *v.* WATHEN.*

---

APPEAL AND ERROR; STREET RAILWAYS; NEGLIGENCE.

1. A judgment in a personal injury action will not be reversed because a special instruction granted on behalf of the plaintiff was not sufficiently specific, where the charge to the jury supplemented and made plain the point mentioned in the instruction.

2. It is a question for the jury whether it was the duty of the conductor of a street railway car, upon his stopping the car at a street corner to enable a passenger, a woman, to alight, to warn her of an excavation near the track at that point, made in the course of the repair of the street, if under the circumstances he was not justified in assuming she had observed or would observe it; and it is immaterial whether the excavation was made by the municipality or the railway company.

No. 2143.  Submitted October 17, 1910.  Decided November 1, 1910.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia on verdict, in an action to recover damages for personal injuries. *Affirmed.*

The facts are stated in the opinion.

*Mr. R. Ross Perry, Mr. R. Ross Perry, Jr.,* and *Mr. G. Thomas Dunlop* for the appellant.

*Mr. A. A. Birney* and *Mr. H. F. Woodard* for the appellee.

---

*Street Railways—Negligence.*—As to liability of street railway company for stopping car at improper place for passenger to alight, see note to *Melton* v. *Birmingham R. Light & P. Co.* 16 L.R.A.(N.S.) 467.  As to the duty of interurban roads with respect to accommodations for boarding or leaving car at country crossings, see note to *McGovern* v. *Interurban R. Co.* 13 L.R.A.(N.S.) 476.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal from a judgment of the supreme court of the District of Columbia upon a verdict for the plaintiff, Susan Wathen, appellee here, awarding her damages for injuries sustained by her in alighting from a street railway car of the defendant, the Capital Traction Company, appellant here, owing to an alleged concealed danger, of the presence of which the plaintiff alleges that the defendant did not warn her, although in duty bound so to do.

The declaration alleges in substance that on the 27th day of July, 1907, the plaintiff was a passenger for hire on a street railway car operated by the defendant; that when the car reached a point on Pennsylvania avenue near Twelfth street, N. W., plaintiff notified defendant's conductor in charge of said car that she desired to alight at said Twelfth street; that the defendant, disregarding its duty, did not stop its car at said Twelfth street, but proceeded along Pennsylvania avenue to a point near its intersection with Fourteenth street, West, "which was a dangerous place at which to alight from said car, in that at said last mentioned point or place, there was an open excavation or hole in said Pennsylvania avenue, of which the plaintiff had no knowledge, but the said defendant wholly failed and neglected to notify or inform the plaintiff that the said point was not a safe place to alight from said car, or to notify or inform the plaintiff of the said excavation or hole, which said excavation or hole was adjacent to the said defendant's said railway, and being then and there under and extending slightly beyond the running board or foot board of said car upon the side thereof upon or from which it was customary and proper for passengers to alight; and the plaintiff, in the exercise of due care and caution on her part, and being ignorant of the existence of the said excavation or hole, and relying upon the performance by said defendant of its duty to stop the said car for the plaintiff to alight therefrom at a place where it was or would be safe for her so to do, proceeded then and there to alight from said car, and in so doing stepped into and fell into

said excavation or hole, and was severely wounded, bruised, and injured," etc.

At the trial it appeared that Pennsylvania avenue, along which the car was proceeding on the occasion in question, was being resurfaced and regraded. To conform to the new grade of the street the defendant company was required to change the grade of its tracks. In no instance, however, was the grade changed more than 12 or 14 inches. In doing this work it was necessary to excavate the pavement from the top of the tracks, and then alongside the tracks to a depth of 4 or 5 feet to the bottom of the track construction. The track itself was then made to conform to the revised grade, and the sides were back-filled, and a concrete foundation put in for the paving between and adjacent to the tracks. According to the testimony of the defendant's chief engineer, the excavation alongside the tracks entended "to the point either 2 feet outside (for which we were responsible), or enough outside to meet the grade of the street." There was evidence before the jury that the plaintiff seasonably asked the conductor to stop his car for her to alight at Twelfth street; that the conductor assented to her request, but neglected to comply with it; that upon his attention being called to his failure to stop as requested, and upon being asked to stop as soon as possible, he, while standing on the running board, the seats of the car extending crosswise, signalled for the car to stop; that as soon as the car did stop, plaintiff stepped out on the running board and thence down; that there was an excavation or hole about 6 inches deep alongside the track, and extending 4 or 5 inches beyond the running board; that plaintiff did not see this excavation or hole, and, in getting down from the running board, stepped into it and was injured. There was some conflict in the evidence as to the exact character of this excavation at the point of the accident, but there was sufficient evidence to warrant the jury in finding that the excavation existed as alleged in the declaration. There was also evidence before the jury that the plaintiff knew of the general condition of the street prior to boarding the car on the day she was injured. There was no evidence, however, that she had any knowledge of the particular

defect or condition which caused her injury. In a charge which is a model of clearness and conciseness the court instructed the jury that the only theory upon which the plaintiff could recover was whether or not the defendant's conductor was under the duty, at the time the plaintiff undertook to alight, to warn her of danger. As to the duty of the conductor in this regard, the jury were fully and fairly advised. The court also instructed the jury, in substance, that the plaintiff could not recover if she was negligent. The learned trial justice then said: *"That involves the determination by you of what actual notice, if any, she had of the very condition under foot at the place where she undertook to alight.* To find out whether she did or did not have any knowledge about what the condition was there, you will have to look into the evidence, and determine what opportunity of observation she had of the conditions elsewhere on the street, which would indicate to a person of reasonable prudence that all points along the rails were likely to be dangerous, because she did not have any actual knowledge of the fact that the place at which she did undertake to alight was a dangerous place; yet if the condition of the length of the street over which she had passed in the car was such as to indicate to a person of reasonable prudence and caution that the place from which she was soon to alight would probably be a place disturbed and dangerous, then the notice that she had in that regard, brought to her from this general condition of the street that I have referred to, would be such as to call upon her to use her faculties at the time of alighting, for her own protection; and if she failed in that regard, and fell having in mind all the matters which tended to call her attention to the general condition of the street, and therefore of the particular place; if she failed in alighting, with the knowledge she had or should have had from what she had already seen; if she failed to use the care and prudence for her own protection, in looking before she stepped, that a person of reasonable prudence and caution would have used,—then she was negligent in undertaking to step off without using that precaution; and that would prevent her from recovering." The court also granted a prayer submitted by the

defendant, directed to this branch of the case.  The court had previously instructed the jury, at the request of the plaintiff, as follows: "If the defendant stopped the car for the plaintiff to alight therefrom at a point where, because of an excavation of the street, it was unsafe for a passenger of the sex and age of the plaintiff to alight, then the jury should determine, if under all the circumstances it was the duty of the defendant to notify the plaintiff of the condition of the street, and if they should find that under all the circumstances it was the duty of the defendant so to notify the plaintiff, and that it did not give such notice, they will be warranted in finding the defendant to have been guilty of negligence; and if they shall find such negligence, and, further, that in consequence thereof and without contributory fault on her part, the plaintiff while alighting from the car fell into such excavation and was injured, the verdict should be for the plaintiff."  The granting of this instruction is assigned as error, one contention being that it was not sufficiently specific.  But this contention does not take into account that part of the court's charge above quoted, in which the court instructed the jury that the question for determination was *"the very condition under foot at the place where she* (the plaintiff) *undertook to alight."*  This language supplements and makes plain what was meant in the earlier instruction on the same point.

If the jury found from the evidence, as it was justified in doing, that such an excavation existed at the point where the plaintiff undertook to alight, it certainly was for them to determine, in view of the nature of this excavation, whether anyone using his or her eyesight, that is to say, exercising due care, would or would not have seen it in alighting from the car, taking into consideration, of course, the general condition of the street.  An excavation projecting not more than 4 or 5 inches beyond the running board of the car, would not be likely to be noticed by a passenger, unless his attention had previously been directed to it.  We all know that, as a usual thing, where a car is stopped for a single passenger to alight, as happened in this case, the car stopped no longer than is absolutely necessary. The passenger knows this and loses no time in getting off the car.

To hold, as matter of law, that the plaintiff should have observed the existence of this excavation, and that the defendant had the right to assume that she would, would be a usurpation of the functions of the jury. The question, in our view of the evidence, was clearly one for the jury. If, therefore, such a dangerous condition existed at the point of the accident as that the defendant was not justified in assuming that the plaintiff had observed or would observe it, in the exercise of due care, which, as we have previously said, and which the court carefully instructed the jury, was to be determined with reference to the surrounding circumstances, it clearly became the duty of the defendant either to assist the plaintiff in alighting, or to warn her of the danger. It may be conceded that a different rule attaches to the operation of a street railway than obtains in the operation of a steam railroad, in respect to furnishing safe places for the discharge of passengers. The one stops at stated and regular places, while the other discharges its passengers at convenient points along the streets. But this difference in duty does not absolve the street railway company from its duty to warn passengers of the existence of hidden danger known to it, when it chooses to stop its car where such hidden danger exists. *Sweet* v. *Louisville* R. Co. 113 Ky. 15, 67, S. W. 4. Nor does it make any difference in our view whether the hidden danger is caused by the municipality in the repair of the streets, or by the street railway company in making its tracks conform to the requirements of the municipality. In either case, if the danger is known or should be known to the railway company, and it is of such a nature that a passenger, in the exercise of due care, will not be likely to observe it, it is the duty of the company, if it stops its car at such a place, to notify passengers of the danger. *Flack* v. *Nassau Electric R. Co.* 41 App. Div. 399, 58 N. Y. Supp. 839. In this case, however, the evidence fully justified a finding that the dangerous condition was caused by the company itself.

We have carefully examined the cases cited by appellant, and find nothing therein inconsistent with our rulings in this case.

Finding no error in the record, the judgment is affirmed, with costs.                            *Affirmed.*