Cincinnati, New Orleans & Texas Pacific Ry. Co. v. Dickerson's Admr.

CASE 92—PETITION ORDINARY—January 12.

# Cincinnati, New Orleans & Texas Pacific Railway Co. v. Dickerson's Administrator.

### APPEAL FROM GRANT CIRCUIT COURT.

1. RAILROADS—ACTION FOR DAMAGES—EVIDENCE.—In an action against a railroad company for the negligent killing of plaintiff's intestate by a train, the admission of evidence to the effect that immediately after the accident the conductor of the train said to one in a working garb "Why, in the name of God, didn't you see this in time to prevent it?" and the person addressed responded that "We did see it as we entered the cut," was not prejudicial to the defendant in view of the fact that the court at the time instructed the jury that they were not to consider this evidence for any purpose, except to contradict such person if he had testified.

2. INFANT AS TRESPASSER—CARE REQUIRED OF COMPANY.—A railroad company is liable for the death of, or injury to, an infant of such tender years that it is incapable of having an intent, or of comprehending its rights, or danger of injury, if the death or injury was the result of the failure upon the part of those having charge of the train to discover the infant's peril by reason of their failure to use ordinary care in looking along the track of the road. The child although having no right to be on the track, can not, in law, be deemed a trespasser.

C. B. SIMRALL FOR APPELLANT.

1. It is not the duty of the engineer of a train to exercise any care to discover the presence of a trespasser on the track. Given v. K. C. R. R. Co., 12 Ky. Law Rep., 951; L. & N. R. R. Co. v. Howard's Adm'r., 82 Kentucky, 217; K. C. R. R. Co. v. Gastineau's Adm'r., 83 Kentucky, 122; France's Adm'r., v. L. & N. R. R. Co., 15 Ky. Law Rep., 244; L. & N. R. R. Co. v. Cooper's Adm'r., 7 Ky. Law Rep., 102; McDermott v. K. C. R. R. Co., 93 Kentucky, 408; Brown's Adm'r. v. L. & N. R. R. Co., 17 Ky. Law Rep., 145; Haskin's Adm'r. v. L. & N. R. R. Co., 17 Ky. Law Rep., 78; Gherkin's Adm'r. v. L. & N. R. R. Co., 17 Ky. Law Rep., 201.

2. The negligence of the parents or persons in charge of a child, but for which the injury would not have occurred, may be imputed to the child and will bar recovery. L. & P. Canal Co. v.

Vol. 102]        JANUARY TERM, 1898.        ·    **561**

Cincinnati, New Orleans & Texas Pacific Ry. Co. v. Dickerson's Admr.

Murphy's Adm'r., 9th Bush, 531; Schlenck's Adm'r. v. Central Passenger Railway Co., 15 Ky. Law Rep., 410; Shearman & Redfield on Negligence, sec. 48; Lynch v. Smith, 104 Mass., 52 Ihl v. Street Ry. Co., 47 N. Y., 323; Gibbons v. Williams, 135 Mass., 333; Hatfield v. Pogue, 21 Wendall, 615; Am. & Eng. Ency. of Law, vol. 4, page 87, and authorities there cited.  Grethian's Adm'r. v. Railroad Company, 19 Am. & Eng. Railway Cases, 342. McGeary v. R. R. Co., 135 Mass. 363; Mangan v. Brooklyn City Railway Co., 36 Barber, 230.

3. It was improper for the court to permit the evidence of Mrs. Dickerson with reference to what some young man, who was not identified, said, as it tended to show that some officers of the train had admitted that the child had been seen as they entered the cut, and that therefore the accident could have been prevented.

JOHN GALVIN, OF COUNSEL ON SAME SIDE.

DICKERSON & WILLIS FOR APPELLEE.

1. The failure of an engineer to perform his duty in maintaining a reasonably vigilant lookout along the track in front of him will make the company liable for killing an infant who was nominally a trespasser.  Pickett v. Wilmington, &c., Co., 30th L. R. A., 257; Am. & Eng. Ency. of Law, vol. 4, page 45; Goetz's Adm'r. v. L. & N. R. R. Co., 79 Kentucky; Harriman v. Railroad Co., 12 N. E. Rep., 451.

2. The appellant failed to show, or offer to show, any negligence on the part of the parents on the day, or at the time of the injury; and the fact that on occasions prior to that time there might have been some carelessness could have had no effect upon the accident.  The train which killed the infant was more than two hours late, and the mother did not expect it at that time of day.

JUDGE GUFFY DELIVERED THE OPINION OF THE COURT.

This action was instituted by the appellee against the appellant to recover for the killing of Fletcher Dickerson by the appellant's train of cars striking and so injuring said Fletcher Dickerson as to produce death in a short time thereafter.  In the petition it is alleged that the killing was done carelessly and negligently.  The answer denied all carelessness or negligence upon the part of the ap-

[36]

562　　　　KENTUCKY REPORTS.　　　[Vol. 102

Cincinnati, New Orleans & Texas Pacific Ry. Co. v. Dickerson's Admr.

pellant. The second paragraph of the answer, in substance, admits the killing; but says it was unavoidable, and not the result of any negligence or carelessness; that the said Fletcher Dickerson was an infant of tender years, and as it is advised four years of age, and at the time of the injury said Fletcher was standing or playing upon the track of defendant's railroad where he had been permitted to go and be, by the gross negligence of the parents of said Fletcher Dickerson, and after the presence of said Fletcher upon said track became known to the agents of defendant in charge of the train, it was impossible to stop said train or to lessen its speed so as to avoid striking and killing said Fletcher Dickerson; that the killing was caused solely by the negligence of the parents of said Fletcher in allowing or permitting him to go or be upon the track of defendant's railroad on which they knew that defendant's trains were constantly passing. The third paragraph of the answer attacks the constitutionality of the law authorizing a recovery in such cases. The demurrer of plaintiff to the third paragraph of the answer was sustained.

The reply of plaintiff denied all contributory negligence, and averred that after appellant discovered the presence of the child upon the track, or after they could have discovered its presence upon the track by the exercise of ordinary care, they could have prevented the injury by the use of ordinary care in stopping and impeding the speed of the train, and averred that the injury was the result of gross negligence upon the part of the appellant. Defendant's demurrer to the reply was sustained.

Afterwards an amended reply was filed. After the issues were fully made up a trial resulted in a verdict and judgment in favor of the plaintiff for five thousand dollars, and appellant's motion for a new trial having been overruled, it prosecutes this appeal.

The proof conduces to show that the decedent was about two years and seven months old, and that when struck by the engine, he was standing so near the rail that the projection of the engine struck him and caused his death. The proof also conduces to show that there was a curve in the road about seven or eight hundred yards from where the child was struck, and that after passing that curve the road was straight, and nothing to obstruct the view between the curve and where the accident happened. It also appears that the mother saw the smoke of the train as it approached, and then discovered the peril of her child, and started toward him, waving her hands and her hair streaming in the air, and that she reached the edge of the railroad, not many yards from where the child was struck, before it was struck by the train. It further appears that one Maynor was attracted by the screams of the mother, and ascertained the perilous condition of the child and attempted to rescue it, and got within a few feet of it before it was struck. The injury happened a short distance from a private crossing, and it is the contention of appellee that the child must have gone on the railroad at the crossing, and then walked along the ties to the place where it was struck; and there is some proof conducing to show, that owing to the nature of the fill and cinders, that it could not have climbed upon the track at the place where the injury occurred.

The substance' of the engineer's testimony is that after passing the curve he looked ahead and that the track was clear, and that he was certain the child was not then on the track, otherwise, he would have seen it, and that he did not see it until he was within about twenty feet of it, which was entirely too near to avoid the injury. He also testified that he saw the woman running towards the track waving her hands wildly and her hair streaming in the air, and seemed to be greatly excited, and that it occurred to him that if he checked the train she would get to the crossing before the train did, but that if he went on he would pass the crossing before she reached it and thus avoid injuring her, and that he did not turn his attention to the track until within about twenty feet of the child, which was the first time he discovered it.

The injury to decedent happened about 7 o'clock on a clear, bright morning. The train was perhaps an hour and a half late, and was running at the rate of 45 or 50 miles per hour.

It is the contention of appellant that the court erred in the admission of testimony, and also in refusing testimony offered by the defendant; tending, as it is claimed, to show negligence upon the part of the parents of the child. We do not think, however, that the testimony was erroneously rejected. It could not properly have affected the verdict in this case. The testimony introduced and complained of was that immediately after the accident occurred the conductor and some person in a working garb came back to where the injured party was, and that the conductor said: "Why, in the name of God, didn't you see this in time to prevent

it;" and that the party in the working garb said: "We did
see it as we entered the cut." The court, however, instruct-
ed the jury that they were not to consider that testimony
for any purpose, unless it was to contradict such person
if they believed the person so making the remark had testi-
fied in the case. We are not, therefore, inclined to hold
that the admission of that testimony, restricted as it was
by the court, could have been prejudicial to the substantial
rights of the appellant.

It is earnestly insisted for the appellant that the decedent
was a trespasser upon the track of the company, and that
unless the engineer did in fact see the child in time to have
avoided the injury that the appellant was not liable, and
that the court should have so instructed the jury, and that
there was no evidence tending to show that the engineer or
those in charge of the train did see the perilous condition of
decedent in time to have averted the injury. A number of
authorities are cited by appellant in support of its conten-
tion, and it may be conceded that some of them taken alone
or unexplained tend in some degree to support the conten-
tion. It may, also, be conceded that the decedent had no
legal right to be upon the track at that time and place; but
the decedent, on account of its age, could not in fact and in
law be an actual trespasser. If it be established that those
in charge of the train did not in fact see the child in
time to have avoided the injury, the chief question for de-
cision is whether or not the appellant is liable if in fact the
agents in charge of the train, if they had looked along the
track, could have seen the peril of the child in time to have
prevented the injury.

In Ky. Central R. R. Co. v. Gastineau's Adm'r., 83 Ky., 125, the court in discussing the liability of the appellant for injuries alleged to have been inflicted upon a boy fourteen years of age, said: "We are aware that it has been held in some cases, as for instance, Flowers v. R. R. Co., supra, that if the deceased is a trespasser his being of tender years makes no difference, because the company is under no duty to him which requires his protection; but, in our opinion, age should be considered upon the question of contributory neglect; and one should exercise reasonable care to anticipate and prevent an injury to a child of such tender years as to have but little or no discretion; although he may be technically a trespasser. His condition excuses his concurrent negligence. Humane consideration requires such a rule."  *  *  *

"So a railroad company should be held liable, if its employees in charge of its moving train see that a child, say two years old, is walking around it, and fail to look to its protection; although it may technically be a trespasser, and not at the moment in immediate danger. Their neglect to do so would be willful. A child without discretion, although a trespasser, occupies a legal attitude to the company s m- ilar to that of an adult, who is not a trespasser, save a greater care or caution should be exercised to the former by reason of his helplessness."

McDermott v. Ky. Central R. R. Co., 93 Ky., 408, was a suit to recover for an injury to a child of 8 years of age. In that case it seems that the injured party was in fact where he had no right to be, but the court in discusssing the question said: "It results that the engineer of a mov-

ing train, whether passenger or freight, is required to give
signals of its approach to certain places, and diligently keep
in view the track ahead of him for safety to those who have
a right to go on or across the track, and of passengers and
property being transported, not for protection to a tres-
passer on the track, whose death or injury the company can
be made legally liable for only in case his peril was dis-
covered or by diligent attention of the engineer to his duty
to others might have been discovered in time to prevent
the train running over him."

The case of Cahill v. Cincinnati, &c. Railway Co. was an
action for an injury to a party at a private crossing, where,
however, it seems that the party had by some arrangement
a right to use as a crossing. One of the questions
discussed in the opinion in that case was whether the failure
of the company to give the required signal at a public
crossing was such negligence as to make the company liable
for injury to a person at a private crossing.   The court in
that opinion said:   "There being no statute of this State on
the subject, nor for the reason mentioned no decided weight
of authority one way or the other, the question before us
must be determined according to reason and analogy of the
law, as was the original question of the duty of railroad
companies to give signals on highways and street crossings.
Although it may be regarded an unreasonable hindrance
to the regular and prompt movement of trains, running on
schedule time, to require their speed slackened and signals
given at every private crossing, however little used, it does
not follow that the railroad company is exempt from any
reasonable duty to persons who lawfully go on its track at

such places. On the contrary, it is bound to look out for the presence of persons at an established and recognized private crossing, and use reasonable precaution and vigilance to avoid injury. And so they have a right to act upon the presumption that the company will duly comply with every legal requirement that may affect them in the reasonable use of such crossing."

In Conley's Adm'r v. C., N. O. & T. P. Ry. Co., 89 Ky., 402, etc., the court, in discussing the duty of the road, appellant's intestate having been a trespasser, said: "We recognize and repeat the rule that the operators of a train are ordinarily under no obligation to look out for trespassers; that as a rule they have the exclusive right to their track, and have a right to presume that no person will trespass upon it, and are, therefore, under no obligation to look out for them. But this rule as to looking out for such persons has its exceptions, one of which is that, where the train is run through a city or town and the people thereof may cross the track at any and all hours at such points as may be convenient, whether public or not, and the operators have reason to know that such is the habit, it is their duty to look out for such persons, and take reasonable precaution not to run over them. In making approaches to these places, or going through them, they are required not only to look out but to ring the bell, etc., whether approaching a crossing or not. Why so? It is for the purpose of seeing persons in time not to injure them, and of warning them, whether trespassers or not, of the approach of the train in order that they may get out of the way. This they are required to do even in the bright daytime.

The case of East Tennessee Coal Company v. Harshaw, 16 Ky. Law Rep., 526, was an action to recover for injury to a boy eight years old. It is said in the opinion in this case: "The failure of those in charge to give warning of a railroad train passing through a city or town, or approaching a crossing of a street or public road, has been held by this court negligence of the greatest degree, and will render the company owning it liable for injury caused by such failure, even to a trespasser. It is also well settled that such company is liable for injury done as well to a trespasser as to a person lawfully upon its track, if his peril was, or, by the exercise of that degree of care required in operating railroad trains, might have been discovered in time to prevent or avoid injuring him."

It seems to us to be well settled by the decisions of this court that a railroad company is liable for injuries inflicted upon an infant of such tender years that it is incapable of having an intent or comprehending its rights or danger of injury, if such injury was the result of the failure upon the part of those having charge of the train to discover his peril by the reason of their failure to use such ordinary care as their duty to the train and passengers require them to exercise in looking along the track of the road.

The decisions relied on in support of appellant's contention manifestly refer to adults, or persons of such mature years as to be justly held capable of knowingly committing trespass, and have no application to cases like the one at bar. It would seem that the action of the mother of the child, as detailed by the engineer, would naturally have been notice to the engineer of some danger or obstruction

on the track of the road, and if he had, instead of devoting all of his attention to the woman, cast his eye along the track he most probably would have discovered the child, and, if he had discovered it, the proof conduces to show that he could have arrested the speed of the train to such an extent that Maynor or the mother would have reached the child before it was struck by the train.

The instructions given conform to the views heretofore expressed, and therefore, were not prejudicial to the substantial rights of the appellant, and the instructions asked being in conflict with the opinion herein were properly refused.

Judgment affirmed.